IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| KEVIN M. BUSHROD, #50104-007, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-16-1879 |
| TIMOTHY STEWART, Warden, FCI-Cumberland, | * | |
| MOHAMED MOUBAREK,[1] Clinical Director, FCI-Cumberland, | * | |
| RN McCORMICK, Nurse, FCI Cumberland, | * | |
| MD MCGANN-Medical Doctor, FCI CUMBERLAND, | * | |
| MA'AM SMITH, Unit Manager, | * | |
| MA'AM ARVISO, Associate-Warden of Operations, | * | |
| DR. HERSHBERGER, Head Psychologist, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In his Complaint before this Court, Kevin M. Bushrod raises claims of medical malpractice pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.*, and constitutionally inadequate medical care pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] ECF No. 1; ECF No. 4. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 12,

---

[1] The docket will be corrected to reflect Defendants' names and titles shown in their dispositive motion. ECF No. 12
[2] *Bivens* "'established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). "[A] *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Id.*

which is unopposed.³ In accordance with *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the Clerk sent notice to Bushrod to inform him that he may file a response with affidavits and exhibits. ECF No. 24.

The matter is ready for disposition. The Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. (D. Md. 2016). For reasons to follow, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, ECF No. 12, which the Court construes as a Motion for Summary Judgment is granted.

## I. BACKGROUND⁴

Kevin M. Bushrod is a federal inmate who is presently housed in a halfway house as part of the federal Residential Reentry Program. He claims that during the time he was incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), Defendants denied him physical therapy for his left shoulder injury and appropriate medication for his mental health condition. ECF No. 1.

Bushrod was designated to FCI-Cumberland on May 26, 2015. ECF No. 13-1 at 2.⁵ During his intake health screening, he stated that he suffers left shoulder pain from a gunshot wound sustained in September of 2014, for which he had been receiving physical therapy. He was provided a sling to immobilize his shoulder and continued on Amitriptyline, a medication to treat mental health disorders. ECF No. 13-1 at 14–15.

On May 27, 2015, Bushrod was seen at Health Services for a medical history and physical examination. The physician assistant who examined Bushrod submitted a radiology

---

³ Defendants are sued as "severally and jointly" responsible. ECF No. 4 at 3. Bushrod does not specify whether he is suing Defendants in their official or individual capacities or both. Service of process was accepted for only Defendants in their official capacities. ECF No. 8. For reasons to be discussed herein, the claims against Defendants in both their official and personal capacities are unpersuasive.
⁴ The facts relied on herein are either undisputed or viewed in the light most favorable to the non-movant.
⁵ Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

request to evaluate Bushrod's left shoulder condition. ECF No. 13-1 at 30. The x-ray results revealed post-traumatic deformity of the proximal humerus with multiple ballistic fragments. ECF No. 13-1 ¶ 6; ECF No. 13-1 at 30, 33.

At his psychology intake screening on May 28, 2015, Bushrod reported previous diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD"), Post-Traumatic Stress Disorder ("PTSD"), Anxiety, and Depression. ECF No. 13-1 ¶ 11; ECF No. 13-1 at 83–92. On June 30, 2015, Stephany McGann, M.D., saw Bushrod for complaints of left arm weakness and a decreased range of motion. ECF No. 13-1 at 35. Bushrod reported difficulty raising his left arm above his head and stated that as a basketball player he wanted to obtain better range of motion in his upper extremity. *Id.* at 37. He reported that after he was shot in his left shoulder in September of 2014, he did not undergo surgery. Bushrod said he was provided physical therapy which improved his condition. Bushrod told McGann that he had a good range of motion except for raising his arm above his head. *Id.* at 35. Although McGann expressed reservations about the effectiveness of additional physical therapy, given that the injury was nine months old, she submitted a consultation request for physical therapy for Bushrod. ECF No. 13-1 at 2, ¶ 7; ECF No. 13-1 at 37. On July 29, 2015, the Utilization Review Committee denied the request, finding physical therapy to be medically unnecessary. ECF No. 13-1 at 40.

Bushrod was seen multiple times from August 28, 2015, through July 11, 2016, for complaints of left shoulder pain and weakness. *Id.* at 2, ¶ 9. During his medical appointments, he was examined and found to have a slight decrease in the range of motion in the left shoulder, but had passive and active range of motion. *Id.* at 2, ¶ 9; ECF No. 13-1 at 42–44, 48–59, 65–67. The Clinical Director at FCI, Dr. Mohamed Moubarek, noted the shoulder injury does not prevent Bushrod's participation in daily activities or playing basketball. ECF No. 13-1 at 60–61

(indicating Bushrod injured his knee while playing basketball).

FCI-Cumberland staff manages Bushrod's shoulder injury through "conservative treatment" and "pain management." ECF No. 13-1 at 3, ¶ 10. Dr. Moubarek made the decision not to order further physical therapy because, in his medical opinion, Bushrod had attained the maximum therapeutic benefit he would receive from physical therapy sessions. *Id.* Moubarek states that prior to entering into the custody of the Bureau of Prisons ("BOP"), Bushrod received several months of aggressive physical therapy while in custody of the Central Detention Facility in Washington, D.C., and once it was discontinued, he was directed to continue range of motion exercises on his own. *Id.* In Moubarek's opinion, "due to the nature of his gunshot wound, which includes post-traumatic deformity of the proximal humerus with multiple ballistic fragments still in place, he will not be able to regain the exact same level of range of motion that existed prior to his injury." *Id.*

FCI-Cumberland's Chief Psychologist, Frank Hershberger, who met with Bushrod six times between June 22, 2015, and March 21, 2016, diagnosed him with Major Depressive Disorder, and prescribed cognitive behavioral therapy. *Id.* at 3, ¶ 12; ECF No. 13-1 at 86–92. On August 31, 2015, Bushrod asked to be prescribed antidepressant medication, and was referred to Health Services for evaluation. Bushrod was prescribed Citlopram, Fluoxetine, Sertaline and Paroxetine[6] for his mental health condition, but did not fully comply with the prescribed medication regimens. ECF No. 13-1 at 3, ¶ 12; ECF No. 13-1 at 70, 74, 76, 86–92.

Bushrod asserts that Dr. Moubarek denied him physical therapy and discontinued "all medications" without having access to his medical records. ECF No. 4 at 3. He claims

---

[6] These medications are in a class of medications called selective serotonin-reuptake inhibitors used to treat depression and other conditions. *See* https://medlineplus.gov/druginfo/meds. (last visited Sept. 8, 2017). Citlopram, Fluoxetine, Sertaline, and Paroxetine are also known respectively by their brand names Celexa, Prozac, Zoloft, and Paxil. *Id.*

Moubarek's "off the cuff" medical care constitutes cruel and unusual punishment. *Id.* As relief, he seeks $750,000 in compensatory damages and $250,000 in punitive damages, restoration of medications prescribed for him before his incarceration at FCI-Cumberland, and for Defendants to cease and desist from denying him medical care. ECF No. 1 at 6; ECF No. 4 at 3.[7]

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all

---

[7] Bushrod claims that Defendants are in violation of the "Federal Disability Statutes," the "Rehabiliation Act," and the "Revitalization Act" without explanation. ECF No. 4 at 3. He alleges no facts to raise a claim under the Americans with Disabilities Act or the Rehabilitation Act. The Revitalization Act of 1997 was enacted by Congress to transfer authority for parole matters to the United States Parole Commission, and abolished the District of Columbia Board of Parole. "Revitalization Act," District of Columbia Sentencing Commission, https://scdc.dc.gov/page/revitalization-act. Bushrod is a D.C. parole violator. ECF No. 12-1 at 2. However, any claim of a violation under the "Revitalization Act," is irrelevant to his medical claims.

reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). The claims against Defendants Stewart, Smith, and Arviso will be dismissed under this standard.

### B. Motion for Summary Judgment

Defendants' motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The Court will dismiss Bushrod's FTCA and *Bivens* claims against Defendants Moubarek, McCormick, McGann, and Hershberger on summary judgment.

## III.   DISCUSSION

Defendants contend that Bushrod's FTCA claims are barred because he failed to exhaust administrative remedies prior to initiating this action. ECF No. 12-1 at 6. Defendants assert they are entitled to summary judgment on the *Bivens* claims on the grounds of statutory immunity,

7

lack of personal involvement, and for failure to show the requisite deliberate indifference. ECF No. 12-1 at 8–10.

### A. FTCA Claims

The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (citing *United States v. Sherwood*, 312 U.S. 584 (1941)). "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 814 (1976). The Federal Tort Claims Act ("FTCA") is to be narrowly construed against waivers of sovereign immunity. *Id.* at 813–14. By enacting the FTCA, Congress created a limited waiver of sovereign immunity for claims brought against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2671–2680. Before a Court may exercise jurisdiction over a FTCA claim, a plaintiff must submit proof of exhaustion of administrative remedies by filing a claim with the appropriate federal agency. *See* 28 U.S.C. §§ 1346(b), 2675(a). This requirement is jurisdictional and cannot be waived. *See Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).

On October 1, 2015, Bushrod filed an administrative claim for medical malpractice regarding the treatment he received for his shoulder and mental health. ECF No. 1-2 at 1–5. The BOP Regional Counsel for the Mid-Atlantic Region denied the administrative claim on December 2, 2015. *Id.* at 9. However, the FTCA also "requires the government's liability to be determined 'in accordance with the law of the place where the act or omission occurred.'" *United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (quoting 28 U.S.C. § 1346(b)(1)).

Because the alleged medical malpractice occurred in Maryland, the substantive law of Maryland controls. The Maryland Health Care Malpractice Claims Act ("HCMCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01, *et seq.*, "establishes a state administrative claims procedure relating to malpractice claims," which must be followed by plaintiffs suing the United States for medical malpractice claims. *Willever v. United States*, 775 F. Supp. 2d 771, 777 (D. Md. 2011). HCMCA requires a putative plaintiff to present his claims to Maryland's Health Claims Alternative Dispute Resolution Office ("HCADRO") and to file an expert's certificate that the defendant medical providers had departed from the standard of care, prior to filing suit in federal court. *Id.* Where a medical malpractice lawsuit is filed in state or federal court without complying with these requirements, such a suit "shall be dismissed, without prejudice . . . ." *Willever*, 775 F. Supp. 2d at 777 (citing Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(1)(i)). Presenting the suit to the HCADRO and filing an expert's certificate are not "merely . . . procedural rule[s]" but are "condition[s] precedent to bringing a medical malpractice lawsuit in this Court or the Maryland state courts." *Id.*

Bushrod has not filed his claims with the HCADRO, and has not filed an expert's certificate stating that Defendants departed from the standard of care. *See* ECF No. 12-5. Bushrod does not refute his failure to file with HCADRO or the required certificate and does not claim that any exception to the law applies. Because Bushrod has failed to satisfy this necessary requirement for medical malpractice claims, the Court grants Defendant's Summary Judgment Motion on Bushrod's FTCA claims.

### B. *Bivens* Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

9

(1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference" to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner-plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" by the prison staff in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an

official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

In essence, the treatment rendered must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by *Farmer*, 511 U.S. at 837; aff'd in pertinent part by *Sharpe v. S.C. Dep't of Corr.*, 621 Fed.Appx. 732 (Mem), (4th Cir. 2015)). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Generally, prison officials may rely on the expertise of medical providers. *See Shakka v. Smith*, 71 F. 3d 162, 167 (4th Cir. 1996); *see also Miltier v. Beorn*, 896 F. 2d at 854–55 (reasoning that supervisory prison officials are entitled to rely on the professional judgement of trained medical providers and may be found deliberately indifferent only through intentional interference in the inmate's medical care).

### 1. Claims Against Defendants McCormick, McGann, and Hershberger

Defendants McCormick, McGann, and Hershberger are employed by the United States Public Health Service ("PHS") and assigned to the BOP. ECF No. 12-4. Bushrod alleges McCormick, McGann, and Hershberger provided constitutionally inadequate medical care by exhibiting deliberate indifference to his serious medical needs. *See* ECF No. 1. In response, they assert that they are entitled to absolute immunity from all claims arising from the medical care they provided under 42 U.S.C. § 233a.[8] Section 233(a) confers absolute immunity to PHS

---

[8] The statute provides in pertinent part that:

11

officers and employees "for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). "[T]he immunity provided by §233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section." *Id.* at 812. Bushrod does not dispute that McCormick, McGann, and Hershberger's actions were within the scope of their employment. As such, he does not dispute that they are entitled to immunity. As there is no genuine issue of material fact in dispute, summary judgment shall be entered in favor of McCormick, McGann, and Hershberger as to all *Bivens* claims against them.

### 2. Claims Against Defendants Stewart, Smith, and Arviso

Liability in a *Bivens* action is premised on each defendant's personal conduct in carrying out constitutional violations. *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001). As such, a *Bivens* action may not be premised upon a *respondeat superior* theory.[9] *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014) ("[G]overnment officials cannot be held liable in a *Bivens* case under a theory of respondeat superior for the actions of their subordinates."). Absent vicarious liability, each government official is liable for only his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Trulock*, 275 F.3d at 402. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (imposing

---

> The remedy against the United States provided by sections 1346(b) and 2672 of title 28 ... for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C § 233(a).

[9] *Respondeat Superior*, is a Latin phrase meaning meaning "let the superior answer." This doctrine provides that an employer is liable in certain cases for the wrongful acts of his employee, and a principal for those of his agent. *See* Blacks Law Dictionary (8th ed. 2004).

12

liability on a supervisor requires evidence of actual or constructive knowledge that (1) a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered).

Bushrod does not allege that Defendants Stewart, Smith, or Arviso were personally involved in his medical treatment. Rather, Bushrod alleges Smith had a duty to "look out" for his welfare, but failed to do so. ECF No. 4 at 5. Bushrod claims Arviso, Associate Warden of Operations at FCI, did little to ensure subordinates fulfilled their "duty" to him. ECF No. 1 at 3. Bushrod appears to fault Warden Stewart in his supervisory capacity. *Id.* at 3.

As nonmedical corrections supervisors, Stewart, Smith, and Arviso were entitled to rely on the medical judgment of prison medical providers. *Shakka*, 71 F.3d at 167. As such, Bushrod has not sufficiently alleged personal misconduct on the part of Defendants Stewart, Smith, or Arviso. Consequently, the claims against Stewart, Smith, Arviso will be dismissed.

### 3. Claims Against Moubarek

The documents before the Court demonstrate that during the time Bushrod was housed at FCI-Cumberland, medical and mental health providers met with Bushrod concerning his complaints regarding his left shoulder and mental health. *See, e.g.*, ECF No. 1-2 at 4. His requests for physical therapy and for antidepressants were considered. He was provided antidepressants and cognitive behavioral therapy. ECF No. 13-1 at 3. After reviewing Bushrod's medical history, his level of active and passive range of motion, and his ability to participate in sports and daily activities, Dr. Moubarek determined that additional physical therapy would not

provide additional "therapeutic benefit." ECF No. 13-1 at 3. To the extent Bushrod disagrees with Moubarek about the course of his medical care, such disagreements fail to amount to deliberate indifference necessary to support an Eighth Amendment claim. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (reasoning that allegations, which may support a medical malpractice claim, which amount to a disagreement with the doctor do not support a deliberate indifference claim); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).[10] Accordingly, Moubarek is entitled to summary judgment.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment, is granted without prejudice. A separate Order follows.

Dated: September 15, 2017

GEORGE J. HAZEL
United States District Judge

---

[10] Having concluded there was no Eighth Amendment violation, the Court need not reach Defendants' affirmative defense of qualified immunity.

14